## SWICEGOOD v. FEEZELL.—196 S. W. (2d) 713.

Eastern Section. March 16, 1946.

Petition for Certiorari denied by Supreme Court, October 12, 1946.

350

J. W. Stone, of Harriman, for appellant.

D. O. Harris, of Harriman, for appellee.

BURNETT, J. Elmer Swicegood (appellee) instituted this action in the Chancery Court of Roane County on August 1, 1939, for the purpose of enjoining the defendant, Essie Feezell (appellant here), from obstructing a public road, leading from complainant's land over the land of the defendant to where the roadway intersects an admitted public road known as Whalen Road.

On August 10, 1939, the defendant filed an answer, to which was attached numerous affidavits, denying the allegations of the bill. It is impossible, under this record, to state definitely what happened to the case during the next five years. Apparently the case was passed from time to time and at least one mistrial was had before a jury on depositions and proof heard in open court.

On June 6, 1944, the Chancellor, over objection of the defendant, allowed an amendment to the original bill. In this amendment it was prayed that in case the complainant was wrong in asserting the road in question was a public road that the "court make such other and further orders as are necessary to enforce a right of easement

over the said property as he has a right to ask under Sections 2747, 2748, 2749, and various other Sections of the Code of Tennessee to perfect into the complainant a proper easement over said way.'' It was also alleged in this amendment that the lands of the complainant were wholly surrounded by lands of others and that he had ''no other adequate convenient outlet''—''except over the roadway described'' in the second paragraph of his original bill which is as follows, to-wit: ''That when complainant took possession of said tract there was an outlet or road leading from his tract to the main road, known as Whalen's road. That his said tract is located some 500 yards off the Whalen road and the only entrance and outlet to the said tract is a road leading from Whalen's road to complainant's tract. Said road being approximately 500 yards long. The said tract is cut off from any public road other than the road leading from the Whalen road to his tract and the land of the defendant's adjoins the said road leading from Whalen's road. That the said road leading to complainant's tract has been used as a public road for some 30 years and when complainant took his deed, the road was being used as a public road and was so used until on or about the 6 day of March 1939 when due to acts of the defendant, he the complainant was unable to longer use the road.''

On December 4, 1944, the defendant answered the above amendment denying the allegations thereof and asserting specifically that said amendment does not comply with the requirements of the Code Sections relied on ''in that it does not set out the amount and location of the land sought to be condemned, neither does it make all the other land owners to be affected by the road parties to the suit.'' The answer also avers that the lands of the complainant do not adjoin the lands of the defendant and

must cross the lands of at least two other parties (naming them) before crossing the lands of the defendant.

On December 6, 1944, the Chancellor, "sitting as Chancellor," heard the case on the entire file, depositions and proof heard in open court. He found, first, that "the road in question is the most adequate and convenient outlet to get in and out from complainant's place to the public road; and that there is no other way for him"; third, that the land taken is a small strip as shown by an exhibit to one of the witnesses; fourth, "that the land taken is of insignificant value and that having jurisdiction of the cause for one purpose that he has jurisdiction for all and that the court has a right to fix the value of the land, —without the necessity of impanelling a jury of view." He therefore fixed the value at $10; fifth, the defendant was perpetually enjoined from obstructing said roadway.

A motion for a new trial was seasonably filed, overruled and appealed here where numerous errors are assigned.

It was conceded in argument and no question is here raised that the Chancellor was correct in his first finding above. The errors therefore assigned all go to the action of the court in condemning the road under the statutes in question. The various Code Sections involved are the codification of Chapter 75 of the Acts of the Legislature of 1921. This Act was held to be valid and constitutional in Derryberry v. Beck, 153 Tenn. 220, 280 S. W. 1014.

The Act in question is analogous to other eminent domain statutes. In our discussion and treatment of its applicability we must necessarily refer to various eminent domain cases by analogy. In City of Chattanooga v. State of Georgia, 151 Tenn. 691, 698, 272 S. W. 432, 434, Mr. Chief Justice Green said: "Of course the power of

eminent domain is to be strictly construed, and the procedure prescribed by the statute must be followed.''

For a full discussion of the subject setting forth the general law of the land (which is in harmony with the above quotation) on the construction to be given eminent domain statutes, see 18 Am. Jur., page 650, section 26; 29 C. J. S., Eminent Domain, Sec. 22, p. 806.

With this rule in mind let us examine our statute and the proceeding in this case thereunder.

■ First, it is said the proceeding herein is faulty because all property owners,. through whose land this road runs, are not made parties either complainant or defendant. This requirement is set forth in Code, Section 2747. The provisions in this regard do not say that a proceeding will be void if the property owners are not made parties. See Brady v. Correll, 20 Tenn. App. 224, 97 S. W. (2d) 448. What the language means is that one cannot acquire rights through and over these properties unless these parties are made parties to the action. It protects the property owner and means that the complainant acquires no rights through the proceeding unless they are parties. Of course these owners can voluntarily consent for their property to be used and if they consent they are not necessarily parties. In this cause a property owner, not a party, does so consent in her testimony.

■■ Second, it is said the description of the land to be taken as shown by the quotation of paragraph II of the original bill is insufficient. We thoroughly agree with this contention. Code, Section 2747 in part provides: ''And shall set out the portions of land or property desired for said easement or right of way and the amount, extent, and location of same desired; . . . and praying

that a sufficient amount of the property be set apart by metes and bounds for said easement or right of way . . ."

Unless this is done by a proper description setting forth some specific boundaries in the petition or exhibits attached thereto and made a part thereof a decree cannot be made fixing this right of the complainant. See Hydro Elec. Corporation v. Shanks, 156 Tenn. 91, 209 S. W. 809; Fite v. Gassaway, 27 Tenn. App. 692, 184 S. W. (2d) 564, 18 Am. Jur., page 969, section 325. Obviously the description herein is insufficient.

■ Third, no jury of view was impaneled to fix the damages. Code, Section 2748 requires that if a pro confesso is taken or answer filed that the court shall "issue a writ of inquiry of damages to the sheriff," in which he is commanded to summons a jury of view to fix the damages. This is mandatory unless when the case is tried on its merits "no sufficient cause be shown" why the requested right "should not be granted." It is further provided herein that by consent or where the petition is not answered as "in chancery cases" the clerk of the court may issue a similar order to the sheriff.

■ Apparently the Chancellor of his own motion and without the consent of the parties decided to ignore the requirements of the statute above referred to, and fixed the damages himself. In doing so he accepted the statement of one witness (this was the very minimum of land taken) and fixed damages accordingly. The statement of this witness is not an accurate measurement—more or less guess work—and does not attempt to set out the metes and bounds of the property taken. In doing this the Chancellor has taken away from the landowner a fundamental constitutional right of the landowner. The landowner is clearly entitled to have a jury of view

go on his land and fix the damages as is set forth in the succeeding Code Sections that codify Chapter 75, Acts of 1921, and then if he is not satisfied is entitled to appeal and have a jury of view pass on the matter.

██ The Chancellor stated that his acts as above set forth were based on two maxims, to-wit:

"When chancery has jurisdiction for one purpose, it will take jurisdiction for all purposes; and,

"De minimis non curat lex."

He has jurisdiction by virtue of the statute (Code, Section 2746). It is not necessary to bring the maxim into force to obtain jurisdiction. "The reason of the rule is, the duty of courts to prevent a multiplicity of suits; and Courts of Equity delight to do complete justice, and not by halves." Gibson, Sec. 36. Because this statutory proceeding happened to be in the Chancery Court does not give that court any right to ignore the statutory requirements which are in derogation to the landowner's common right. These rights of the landowner must be strictly construed in his favor. This is especially true under a statute as the one here involved where the request of an individual is the paramount consideration.

█ The second maxim of principle on which his action is based ("the law pays no attention to trifles") is a well-recognized principle when properly applied. It is generally used when very small or infinitesimal errors are urged, as in a $1,000 judgment was excessive by $15 or some such illustration.

█ It is the constitutional right of this appellant to have just compensation for the land taken and also to have the amount of the compensation fixed by a jury of view. When the court or Chancellor fixed this amount it was fixed in a manner not authorized by statute and is therefore void. The power of eminent domain is taking

the property of the owner without his consent and therefore the statutes must be strictly complied with.

The Chancellor found "that the road in question is the most adequate and convenient outlet . . . and that there is no other way."

The proof in the record clearly establishes that the road is "the most adequate and convenient outlet." There are other ways in over other property and some nearer but these other ways are not nearly so adequate and convenient as the road in question. Steep hills, rough terrain, and other similar objects make the road in question the more economical and better road. We therefore concur with the Chancellor in this finding. The statute (Code Section 2746) provides that those who "may be cut off or obstructed or deprived of adequate and convenient outlets may join together" against those who own land and are thus obstructing their way. The quoted language is pertinent because in its use we plainly see the legislature had no intention of restricting the right of way to any way out; they plainly say if the outlet is not "adequate and convenient" the shut-in may condemn a way out.

The result is that this case must be reversed and remanded so that the complainant may have an opportunity to amend his complaint so as to comply with the statute in so far as a proper description is concerned. When this is done a jury of view should be appointed who may allow adequate compensation for the land actually taken, and for such incidental damages as may be sustained, to be offset by any benefits accruing to the defendant, as provided by Chapter 75 of the Acts of 1921 as codified. In other words the cause is remanded to be proceeded with according to the provisions of said Act.

Hale and McAmis, JJ, concur.